

Villanova University School of Law
Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2006

# Wilson v. Tillman

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4249

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wilson v. Tillman" (2006). *2006 Decisions.* Paper 964.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/964

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-4249
_____

JOHN D. WILSON,
Appellant

v.

WILLIAM TILLMAN;
JOHN FAUNCE

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil No. 04-cv-00839)
District Judge: Honorable Edwin M. Kosik

_____

Submitted Under Third Circuit LAR 34.1(a)
May 1, 2006

Before: RENDELL, AMBRO and *ROTH, <u>Circuit Judges</u>.

(Filed: June 2, 2006 )
_____

OPINION OF THE COURT
_____

PER CURIAM

    John D. Wilson, a state prisoner, filed an <u>in forma pauperis</u> civil rights action in

United States District Court for the Middle District of Pennsylvania against numerous

_____

*The Honorable Jane R. Roth assumed senior status on May 31, 2006

individuals, including William Tillman, Director of Adappt, Inc., and John Faunce, records custodian of Adappt. In his amended complaint, Wilson alleged First Amendment and equal protection violations in connection with Adappt's refusal to allow him to practice his Jewish faith, as well as a claim of intentional infliction of emotional distress.[1] Wilson is a descendant of Ethiopian Jews and he practices Judaism. The Adappt House is a residential facility that contracts with the Pennsylvania Department of Corrections to provide both chemical dependency treatment and group home services for pre-release and parole candidates.

Wilson arrived at Adappt on August 27, 2003. On August 29, he asked to be allowed to attend Shabbat services. He was told that a request to attend religious services had to be in writing. On Friday, September 5, he submitted a written request to attend Shabbat services the next day. This request was approved, although Wilson may not have known of the approval. Importantly, however, he was not permitted to attend Shabbat services the next day because of a mandatory group outing to a local park. On September 8, 2003, Wilson left the Adappt House, and was transported to the Berks County prison and charged with a parole violation.

Faunce and Tillman answered the amended complaint, discovery ensued, and Wilson was deposed. The defendants then moved for summary judgment, contending that Jewish clients of Adappt House may attend Shabbat services provided they submit a

---

[1] Other claims in the amended complaint were dismissed by the District Court pursuant to 28 U.S.C. § 1915A, and have not been argued on appeal. We hold that they are waived. See Laborers' Int'l Union of North America v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (issue is waived unless party raises it in opening brief).

request in writing, that Wilson's first request came too late and was not in writing, and that Faunce approved his written (second) request to attend Shabbat services. However, the defendants also admitted that Wilson was not ultimately allowed to attend Shabbat services on the approved day. He was instead required to go on an outing with the other residents.

The District Court, applying the factors discussed in Turner v. Safley, 482 U.S. 78, 89-91 (1987), granted summary judgment to the defendants on the free exercise claim, because Wilson was only prevented from attending Shabbat services on two occasions, and he did not allege that he had been prevented from praying privately or reading the Torah. Moreover, permitting Wilson to attend Shabbat services when all staff and clients were at a group outing would have jeopardized the safety and order of the halfway house. (District Court Memorandum, at 16.) In addition, the District Court rejected Wilson's equal protection and intentional infliction of emotional distress claims as incoherent and/or wholly unsupported.[2]

In addition, the District Court concluded that Wilson abandoned any First Amendment claim concerning being required to recite the Serenity Prayer when he failed to allege any such claim in his amended complaint. (District Court Memorandum, at 17 n.2 and 19 n.3.) The court also denied a timely motion for reconsideration. In that motion for reconsideration, Wilson challenged the District Court's conclusion that a reading of the Torah constituted an acceptable alternative to attending Shabbat services.

---

[2] We agree that these claims lack merit for the reasons given by the District Court, and we will not discuss them separately.

3

Wilson appeals.

We will affirm. Our review of the District Court's grant of summary judgment is plenary and we must affirm summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We agree with the District Court that there are no disputed material facts and that the evidence of record establishes that Wilson would be unable to prevail on his claim.

Although a prisoner's personal liberties are curtailed during incarceration, he does not forfeit all constitutional protections by reason of his confinement in prison. DeHart v. Horn, 227 F.3d 47, 50 (3d Cir. 2000) (citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)). "'Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion.'" Id. (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). However, certain restrictions are justified by the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security. Id. at 50-51.

In Turner v. Safley, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. In DeHart we noted that Turner counsels consideration of the following four factors: "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational." 227 F.3d at 51 (quoting Waterman v. Farmer, 183 F.3d 208, 213

4

(3d Cir.1999) (internal quotations removed)). "Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right." Id. "Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally." Id. "And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests." Id.

The District Court correctly applied Turner and concluded that Wilson's First Amendment right to practice his religion was not violated. The Adappt House has no affiliations with any religious group. It is undisputed that a religious directory setting forth the times and locations of all area religious services, including Shabbat services, is posted in the Adappt House for reference by clients, and that Wilson saw the posting. It is also undisputed that, if a client wishes to attend a religious service, he or she need only submit a written request. Wilson does not challenge the written request requirement, and he admittedly did not follow this simple procedure of submitting the request in writing the first time he asked to attend Shabbat services. There was no First Amendment violation with respect to Saturday, August 30, and we will limit our focus to the events of Saturday, September 6.

On September 6, Wilson was made to go on an outing to the park and denied the opportunity to attend Shabbat services. The appellees admit that Wilson was prohibited from attending Shabbat services on September 6. However, they assert that their policy of requiring full participation in house-wide group outings is reasonably related to a legitimate penological interest and is thus valid. The Turner factors support appellees'

5

argument. As part of the therapy administered in this structured environment, all residents of Adappt House must attend group activities. This requirement satisfies the first Turner prong for the simple and straightforward reason that, with respect to residential treatment programs, group participation is synonymous with therapeutic efficacy.

The second Turner factor – the availability of alternative means of exercising the right – presents a closer question, see Fraise v. Terhune, 283 F.3d 506, 518-19 (3d Cir. 2002), but we hold that it too is satisfied. In O'Lone, the Supreme Court held that analysis of the second Turner prong does not require a court to determine if the prisoner had alternative means to celebrate Jumu'ah, or even Mass or Shabbat services for that matter, because, obviously, there are no substitutes for these ceremonies or rituals. But rather, unless there has been a complete prohibition on these ceremonies or rituals, the court should determine whether a prisoner had alternative means to practice his religion *in general.* 482 U.S. at 351-52. See also Sutton v. Rasheed, 323 F.3d 236, 257 & n.35 (3d Cir. 2003). Here, Wilson observed Shabbat services on his own by reading the Gates of Prayer, according to his deposition testimony, and thus he not only had an alternative means to practice his religion, he took advantage of it. Under the facts and circumstances of this case, Wilson cannot show that he had no alternative means to practice his religion *in general* where, on one occasion, his right to attend Shabbat services was denied.

The third Turner prong is also satisfied. Accommodating Wilson on a day when an all-house outing *was already scheduled* would have impacted staffing, scheduling, and resources, at least to some extent. Wilson contends in his brief on appeal that the District

6

Court erred by raising on its own the defense of public safety, but even if public safety was never an issue, the fact remains that accommodating Wilson on Saturday, September 6, would have negatively impacted the all-house group outing with respect to allocation of staff and resources. As to the fourth <u>Turner</u> prong, there was no alternative that would have fully accommodated Wilson at de minimis cost to Adappt's legitimate penological/therapeutic interests.

Wilson's only other contention on appeal is that the District Court overlooked his First Amendment claim with respect to the Serenity Prayer. Wilson asserts that the words, "God grant me the serenity to accept the things I cannot change," offend Judaism, because the power to change is freely given. In his reply brief, he makes similar arguments. Wilson made no mention, however, of any First Amendment claim involving the Serenity Prayer in his amended complaint. We note also that his timely filed motion for reconsideration also makes no mention of any First Amendment claim involving this prayer. We will not consider an issue raised for the first time on appeal. <u>See</u> <u>Harris v. City of Philadelphia</u>, 35 F.3d 840, 845 (3d Cir. 1994) (rule essential in order that litigants are not surprised on appeal by decision there of issues upon which they have had no opportunity to introduce evidence).

We will affirm the order of the District Court.